Argued September 5, decided September 16, 1913.

# SHEBLEY v. ROSE.

(134 Pac. 784.)

**Trusts—Purchase of Option—Contracts—Construction.**

1. Plaintiff, having discovered certain mineral land, contracted with defendant and two others to procure an option thereon, the same to be for the equal joint benefit of the four; that defendant should advance the money for the option, and should be repaid in full the amount so advanced on sale of the land, and the balance remaining from the sale of the option or property secured under it should be divided equally among the four; it being agreed that the title to the property and option should be taken in defendant's name, and that he should hold the same in trust for the joint benefit of all. *Held*, that such contract only contemplated that defendant should advance the money to pay for the option and not the purchase price of the land, and, the option having been purchased, it became the duty of each of the others to contribute his share to the final payment, unless money should be raised by a sale of the property in the meantime, and that, until money was realized from the option or land, defendant held the rights secured under the option in trust to repay his own advances and to divide the overplus equally between himself and his associates.

**Trusts—Purchase of Mineral Land—Advancements.**

2. Where a contract to purchase an option on mineral land, binding defendant to advance the money to purchase the option, only provided that he should hold the same for the equal joint benefit of all the parties, and, after he was repaid for the amount advanced for securing the option from a sale of the property, the balance should be divided among those interested, but, in order to protect himself for the amount advanced to purchase the option, it was necessary for him to pay the further amount necessary to secure the title, defendant held such title in trust, not for the several benefit of each party, but for the joint benefit of all, and hence he was not required to sever the liabilities of his associates by receiving from one his one fourth of the purchase price; but, their liability being joint and not several, defendant was entitled to hold the whole property until all had repaid his advances, they being not joint tenants of the equitable title, but joint *cestuis que trustent*, subject to joint liabilities and possessing joint rights to the performance of the trust.

**Trusts—Trustee—Mining Property—Power of Sale.**

3. Where defendant purchased mineral land under a contract that he should hold the same in trust, first, to secure advances, and, second, for the joint benefit of all the parties to the contract, it being intended that the land should be sold at a profit, a power of sale in favor of defendant for a reasonable price would be implied, without reference to the consent of his *co-cestuis que trustent*; they being entitled, in case of a reasonable offer being procured, to a reasonable time within which to procure a more favorable one.

66 Or.—29

From Jackson: Frank M. Calkins, Judge.

Statement by Mr. Chief Justice McBride.

This is a suit by J. B. Shebley against A. G. Rose, C. W. Mapes and J. K. Kendrick to enforce an alleged trust in certain mining lands, situate in Jackson County. The plaintiff, who is a skilled miner, had discovered lands which he believed to be rich in minerals, and informed Mapes and Kendrick of this fact, and they, in consideration of such information, agreed to find someone who would advance the necessary funds to secure the lands, on condition that they, the plaintiff and the party so advancing the funds, should be equal owners of the land so secured. They induced defendant Rose to advance the money to procure an option to purchase the land, at any time within seven months, for the sum of $350; said $350 being the price of the option, but to be applied on the purchase price in case the deal should be consummated. Thereupon the parties executed the following declaration of trust:

"Whereas, Joseph Shebley, C. W. Mapes, A. G. Rose and J. K. Kendrick have agreed among themselves to procure options for the purchase of certain mineral lands in Jackson County, Oregon, and, whereas, the said Kendrick, Shebley and Mapes have agreed to do the necessary work to procure said options, and, whereas, the said Rose has agreed to furnish the necessary money to be paid down for the securing of said options, and, whereas, all of said parties above named have mutually agreed among themselves that all options procured under this agreement shall be for the equal joint benefit of all of said parties, that is each of said parties shall own a one-fourth interest therein, and, whereas, it has been mutually agreed by and between all of said parties that in the event of the sale of any of said property upon which options are procured under this agreement, the said Rose shall be paid

back in full the amount of money put up by him for securing of said options and the sale of the same shall be taken out of the proceeds of said sale and then the balance remaining from the sale of said options or property secured under said options shall be divided equally among said four parties hereinbefore named, and, whereas, it is mutually agreed by and between said parties that the title to said property so optioned shall be taken in the name of said A. G. Rose, one of the parties hereto and said option shall run to and be in the name of the said A. G. Rose, and the said A. G. Rose shall hold said property and said options in his name in trust for the joint benefit of all of said parties hereinafter named; now, therefore, it is hereby mutually agreed by all of said parties that the said A. G. Rose, shall hold said option in his own name and all title to said lands secured hereunder in his own name on the terms and conditions and benefits hereinbefore recited.

"In witness whereof, the said parties hereto have hereunto set their hands this 23 day of February, 1909.

"C. W. MAPES.
"J. K. KENDRICK.
"A. G. ROSE.
"J. G. SHEBLEY."

When the option was about to expire, the other parties having no money to advance for their share of the property, Rose, to protect himself and the option from forfeiture, advanced the remainder of the purchase price, and secured a deed to the property. After several ineffectual attempts to sell the property, it was finally contracted to be sold for $11,000, but pending the completion of the sale this suit was brought by Shebley. The complaint is too lengthy to be included in this statement, but recites the written agreement and alleges that defendant purchased the property and holds it in trust for plaintiff and the other parties;

that Rose has denied the trust and is attempting to sell the property for much less than its value, and that plaintiff has offered to pay to Rose one fourth of the money advanced in the purchase and expenses incurred, and demanded a conveyance to him of a one-fourth interest in the property, which Rose refused to make.    There was no service upon Mapes or Kendrick.

Rose answered with a general denial of the complaint, and, by way of separate answer, set up the contract heretofore recited, and thereafter continued as follows:

"That under the provisions of the said instrument the said defendant A. G. Rose took an option to purchase the premises described in the complaint at the price of thirty-five hundred dollars ($3,500) ; that under the terms of said written agreement as then understood by all of the parties thereto and as specified therein this answering defendant A. G. Rose was not required to pay the balance due upon said purchase price, but the agreement, as understood by each, every and all the parties thereto, was, that the land should be sold before the expiration of the said option to other parties and that before any further sum than the said sum of three hundred fifty dollars (which sum was first paid by this defendant Rose upon taking up said option) would have to be paid; and that the only money necessary for the said defendant Rose to advance would be the said sum of three hundred fifty dollars ($350), the price first paid by the said defendant Rose on and for the said option.    That when the option was about to expire it became evident that the said parties to said contract would be unable to sell the said property before the expiration of said option and it became necessary in order that said defendant Rose should protect the money that had been already paid out and advanced by him for said option and in order that his interest in and to said property should not be lost to him, to furnish and pay the balance of the purchase price of

said property, to wit, the sum of three thousand one hundred fifty dollars ($3,150). That this answering defendant Rose accordingly paid the said sum of $3,150 and received a deed to said property, all with the understanding, knowledge and consent of all the other parties to said contract, and in consideration of the said defendant Rose making such payment, it was, at the time thereof, understood and agreed by and between all of the parties to said contract that said defendant Rose should take a deed to all of said property in his own name and that he should hold the same with the exclusive right to sell the same for such price and at such time and to such party or parties as he should desire, and that from the proceeds that should be obtained from said sale whenever he should sell the same there should be first repaid to the said defendant Rose all of his costs and expenses of every kind and nature either then incurred or thereafter to be incurred in and by the said matter of the said purchase of the said lands and the sale thereof and also all sums of money that he the said defendant Rose, had paid out on account of the purchase price of said property, together with interest thereon until repaid to him, and the balance, if any there should be, remaining after such repayment had been made to the said defendant Rose should be divided equally among the four parties to said written agreement herein set out. That at the time the said defendant Rose advanced said moneys, it was distinctly understood by and between all of the parties to said contract, that the said defendant Rose should have the exclusive right and option to declare when and to whom and for what price and upon what terms said property should be sold and that the said defendant Rose should at all times hold the entire title and interest, undivided, in and to all of said property until the same should be sold, free and clear from any trust or liens or demands of any of the other parties to said contract other than that the net proceeds and profits, after the payment of all costs, expenses and advance-

ments and interest, should be divided equally between the said four parties to said agreement. That ever since the date of said agreement between said parties and the payment and the advancement of said moneys this answering defendant has held the legal title and now holds the legal title to all of said property in accordance with said contract."

The only evidence introduced by plaintiff of a denial by Rose of his holding the land in trust for plaintiff is the following letter from him to plaintiff, presumably in answer to a demand from plaintiff for a deed to a one-fourth interest:

"Willows, Calif., July 9, 1910.

"Mr. Shebley.

"Dear Sir: Have rec'd. your letter. It seems to me that you had ought to know what would be a fair price for my land. You have told that you owned one fourth of my land, and I would like to know when you got it. You never did and never will unless you buy the whole piece. I think that you are working to get that land for some company. I have been informed that you have made the brags that you would scare me out and from the tone of your letter you have began the scare already. I am no fool if I am not educated. You said I had no right to sell my land. I would like to know who has the right if I haven't. You never had but one fourth of the profit, and if I sell the land the one fourth is all you could get. In my opinion you could not get that. You wanted to know if I had offered to take 5,000 for the land. Yes, I did, but they have not given me an answer yet. You men had better do something soon for I have the intention of going East to spend the winter. Will close.

"Yours truly,
"A. G. ROSE."

On the trial Rose testified to his entire willingness to give plaintiff one-fourth interest, less his advances

and expenses in the property, when the land was sold, and alleged that he would have completed a sale for $11,000, less $1,000 commission to be paid on the sale, if this suit had not been commenced. There was no evidence of the subsequent oral agreement pleaded in the answer. The court entered a decree in favor of defendant and dismissed the suit. Plaintiff appeals.

MODIFIED.

For appellant there was a brief over the names of *Mr. Charles W. Kitts* and *Mr. O. H. Lawler,* with an oral argument by *Mr. Kitts.*

For respondents there was a brief over the names of *Mr. W. E. Phipps* and *Colvig & Reames,* with an oral argument by *Mr. Phipps.*

Opinion by MR. CHIEF JUSTICE McBRIDE.

1. A perusal of the contract between Rose and Mapes, Kendrick and Shebley shows conclusively that Rose had performed all of his part of the contract as to advances when he paid $350 and procured an option to purchase. He did not agree to advance money to purchase land, but to purchase an option. When that option was purchased, it became the duty of each of the other parties to contribute his share toward the final payment, unless money should be raised by a sale of the property in the meantime. Until money was realized in some way Rose held the rights secured under the option in trust: (1) To repay his own advances; and (2) to divide the overplus equally between himself and his associates.

2. To protect himself and them he advanced the further sum necessary to take up the option and secure the title. This title he held in trust not for the several

benefit of each party, but by the terms of the trust for the joint benefit of all. He is not required to sever the liabilities of his associates by receiving from one his one-fourth of the purchase price, but may hold the whole property until all have repaid him his advances. One of the objects of a trust of this character was, no doubt, to prevent the difficulties which would arise from his being required to receive the money due him in separate amounts at different times and from different debtors. Their liability is joint, not several. They are not tenants in common nor joint tenants of the equitable title, but are joint *cestuis que trustent,* subject to joint liabilities and possessing joint rights to the performance of the trust.

3. This property is mining land, and it is evident, both from the contract and from the testimony, that it was purchased for the purposes of sale. Again, it is stipulated that in case of sale Rose is to be repaid his advances. Under these circumstances we think a power of sale is implied, and to say that such sale cannot be made until all the *cestuis que trustent* consent would be to say that any one of them could prevent him indefinitely from collecting his advances. We do not think the parties contemplated any such an absurd thing when they made the contract, and that the trustee has a right to sell for a reasonable price, but that under the circumstances that matter should be subject to the supervision of the court. The price of $11,000, less $1,000 commission, for which the property was contracted appears to us under all the circumstances to have been a fair price at that time; and if that offer still stands, and the plaintiff cannot produce a buyer offering more, the trustee should be permitted to accept it. In that case the plaintiff should be allowed sixty days after the mandate of this court reaches the

lower court in which to produce a purchaser willing and able to pay more.

The claim that defendant had denied plaintiff's interest in the property has some plausibility; but a perusal of his testimony indicates that the letter was simply the writer's opinion of the legal effect of the contract, and there is nothing in it or in the testimony to indicate that he will attempt to defraud the plaintiff in any way. He seems to be the only man who has put a dollar of cash into the investment, and he cannot be blamed for being desirous of getting his money out of it.

However, as the rights of the parties have here been defined and may be known hereafter, the decree of the court will be modified and a decree entered that the defendant holds the land described in trust for himself, this plaintiff, Mapes and Kendrick, jointly, with power to sell the same for the joint benefit of all the parties. Let it be further ordered that no sale will be consummated without twenty days' notice to each of the parties or a waiver of such notice, and that within that time any party may apply to the Circuit Court in this cause, which shall remain open for the purpose of such application by an appropriate supplemental pleading for a hearing as to the reasonableness of the price to be obtained at such sale; and, further, in case the former offer of $11,000 still stands, that defendant Rose shall be authorized to accept it, provided plaintiff shall not, within sixty days from the entry of the mandate in the Circuit Court, produce a purchaser who will pay a greater sum. Nothing in this opinion is to be construed as denying the right of any of the *cestuis que trustent* in case the trustee shall arbitrarily or capriciously refuse to apply to the court by an original suit to compel him to sell. Such right is undoubted.

Neither party will recover costs in this court nor in the court below.

MODIFIED.

MR. JUSTICE BEAN, MR. JUSTICE EAKIN and MR. JUSTICE MCNARY concur.